**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO. _____

ST. PAUL SOBER LIVING, LLC.
a Minnesota limited liability corporation
649 Grand Avenue
St. Paul, MN 55105,

CHRIS EDRINGTON
649 Grand Avenue
St. Paul, MN 55105,

DONALD EDRINGTON
12404 West Auburn Drive
Lakewood, CO 80228,

ADAM TIPTON
31 Elk Springs Drive
Glenwood Springs, CO 81601, and

ALEX COLINS
31 Elk Springs Drive
Glenwood Springs, CO 81601,

       Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS,
GARFIELD COUNTY, STATE OF COLORADO,
a political subdivision of the
State of Colorado,

       Defendant.

---

**COMPLAINT**

---

## PRELIMINARY STATEMENT

This matter arises pursuant to the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* ("FHA"); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").  St. Paul Sober Living, LLC, a Minnesota limited liability company ("SPSL"); Christopher Edrington, an individual ("C. Edrington"); Donald Edrington, an individual ("D. Edrington"); Adam Tipton, an individual ("Tipton"); and Alex Colins, an individual ("Colins" and together with SPSL, C. Edrington, D. Edrington and Tipton, each a "Plaintiff" or, collectively, "Plaintiffs"), seek damages and injunctive relief as redress for: (1) the disparate impact visited upon them due to the acts and decisions of the Board of County Commissioners for Garfield County, Colorado ("BOCC or Defendant") and its subsidiary or affiliate organizations; (2) the affirmative disability-based discrimination manifested in Defendant's acts and decisions; and (3) Defendant's discriminatory refusal and denial to provide Plaintiffs a reasonable accommodation in keeping with Federal anti-discrimination laws.

- The aforementioned denials of Plaintiffs' applications now threaten Plaintiffs Tipton and Colins (both residents of the House and disabled in keeping with the FHA and ADA) with impending eviction based on discriminatory means.  To prevent such a result, Plaintiffs hereby ask this Honorable Court for declaratory and injunctive relief to halt the County's discrimination against them on the basis of handicap or disability in violation of the FHA and ADA, respectively.  Additionally, Plaintiffs seek monetary damages, costs, and reasonable attorneys' fees.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331, 1343; 42 U.S.C. §3613; and 42 U.S.C. §12133.

2. Venue is proper in the United States District Court for the District of Colorado as all acts complained of occurred within this District.

## PARTIES

3. Plaintiff, SPSL is a Minnesota limited liability company, with a principal place of business in St. Paul, Minnesota. It provides affordable housing and supports to individuals with disabilities including those who are recovering from substance abuse and/or alcoholism located at the House.

4. Plaintiff C. Edrington is a citizen of the State of Minnesota. He is a principal in SPSL and assists individuals in their recovery from alcoholism and substance abuse. He has an ownership interest in the House.

5. Plaintiff D. Edrington is a citizen of the State of Colorado and has an ownership interest in the House.

6. Plaintiff Tipton currently resides at the House and is a member of the supportive housing program operated by SPSL. Tipton is a person with a handicap and a disability within the meaning of the FHA and the ADA, respectively.

7. Plaintiff Colins currently resides at the House and is a member supportive housing program operated by SPSL. Colins is a person with a handicap and disability within the meaning of the FHA and the ADA, respectively.

8. The BOCC is a political subdivision of the State of Colorado. The BOCC is responsible for the acts of its agents and employees, including the Building and Planning

Department of Garfield County, State of Colorado (the "Planning Department"), the Planning Commission of Garfield County, State of Colorado (the "Planning Commission"), the Planning and Zoning Board of Garfield County, State of Colorado and Garfield County Code Enforcement Officers.  The BOCC is also responsible for the enactment, enforcement, and application of the Code.

## STATUTORY AND REGULATORY FRAMEWORK

9. In 1988, Congress amended the FHA to extend the guarantee of fair housing to handicapped individuals.  Congress also authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA.

10. Under the FHA, a person is subject to a "handicap" if she or he has a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h).  The term "physical or mental impairment" includes "alcoholism" and "drug addiction (other than addiction caused by current, illegal use of a controlled substance)."  24 C.F.R. § 100.201.  The ADA uses similar terminology to define a "disability." *See, e.g., Tsombandis v. West Haven Fire Dept.*, 352 F.3d 565 (2d. Cir. 2003).

11. Under the FHA, it is unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available.  42 U.S.C. § 3604(f)(1).

12. The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services

or facilities in connection with such dwelling, based in a handicap of such person residing in or intending to reside in that dwelling after it is sold, rented, or otherwise made available. 42 U.S.C. § 3604(f)(2).

13.     The federal regulations implementing the FHA specifically define as discriminatory activity and prohibit the provision of municipal services in a different manner as based on a handicap. 24 C.F.R. § 100.70(d)(4).

14.     The federal regulations implementing the FHA further make it unlawful "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development" because of a handicap. 24 C.F.R. § 100.70(a).

15.     The ADA requires that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any municipal entity. 42 U.S.C. § 12132.

16.     The federal regulations implementing the ADA prohibit a public entity from administering a licensing program or establishing certain requirements for activities of a licensee in a manner that subjects qualified disabled individuals to discrimination on the basis of their disability. 28 C.F.R. § 35.130(6).

17.     The federal regulations implementing the ADA also make it unlawful for a public entity, in determining the site or location of a facility, to make selections that have the purpose or effect of excluding individuals with disabilities, denying them the benefits of certain locations, or otherwise subjecting them to discrimination. 28 C.F.R. § 35.130(4)(I).

## STATEMENT OF FACTS

18. In 2007, Plaintiff SPSL rented the House from Plaintiff D. Edrington for use as a sober house.

19. All of the individuals who participate in the SPSL program and reside in the House are individuals with handicap or disability by virtue of their alcohol or chemical dependency combined with their completion of a substance abuse treatment program. All participants of SPSL and residents of the House, including Plaintiffs Colins and Tipton, must remain drug and alcohol-free while participating in the SPSL program and residing at the House.

20. At the House, SPSL provides a peer-driven sober living environment designed to increase self-responsibility and support for persons in recovery. The House provides a supportive atmosphere that is designed to increase self-responsibility and support for persons in recovery from alcoholism and substance abuse. SPSL does not provide a "recovery program" or services. There is no counseling, or therapy offered to the residents.

21. The residents of the House must willingly choose to participate in the SPSL program and reside at the House. Residents of the House live together as a family and make group decisions based on democratic procedures. The House is used as single family home with similar support and collaborative functions. The residents of the House relate to each other as the functional equivalent of a single family.

22. All of the residents of the House have access to the entire house, all of the household facilities and function together as a single housekeeping unit. There are not any special locks on the doors of the bedrooms or other rooms in the House. The residents share all household responsibilities, and live together to create a "family" atmosphere, where all aspects of domestic life are shared by all the residents.

23. Neither SPSL nor the House is a substance abuse treatment center, halfway house, shelter, or a community care facility. There are no treatment, counseling, therapy, or any type of health care services provided at the House or by SPSL. SPSL is not licensed by the State of Colorado and is not required to be licensed. There are no institutional personnel involved in the supervision or management of the House.

24. The Code governs zoning and land use policy in the County.

25. Upon information and belief, the Code went into effect on or about January 1, 2009, and superseded the previous zoning and land use code utilized by the BOCC.

26. At the time of the establishment of the House in 2007 as a residence for recovering alcoholics and substance abusers, the County's previous zoning code defined the term "family" as "One (1) or more persons occupying a dwelling unit."

27. The current version of the Code which went into effect on January 1, 2009 does not appear to define the term "family."

28. On or about April 8, 2008, Christopher Chappelle ("Chappelle"), a Code Enforcement Officer for the County, wrote a letter to Plaintiff D. Edrington, wherein he advised D. Edrington that the County had received information that he was running a "Sober House/Rooming House at 31 Elk Springs Drive." Chappelle further advised D. Edrington that this "type of business" is not permitted in the County without a special use permit. D. Edrington was advised that he had thirty (30) days to bring the House into compliance with the County's Code.

29. On or about April 21, 2008, Fabian Hoffner ("Hoffner"), an attorney for SPSL, responded to Chappelle's letter. Hoffner advised Chappelle that the residents of the House were a protected class of persons pursuant to the FHA and ADA by virtue of being in recovery from

alcoholism and drug addiction. He further advised Chappelle that the BOCC's anticipated enforcement of the County's Code against D. Edrington for using the House as a "sober house" constituted illegal discrimination under the FHA and ADA.

30. On or about July 2, 2008, Chappelle responded to Hoffner's April 21, 2008 letter. Chappelle informed him that independent of whether the House residents were protected under the ADA or FHA, the BOCC considered the use of the House to be that of a boarding or rooming house.

31. Chappelle further stated that the House was located in the PUD, which is zoned single family use. Chappelle further advised that the use of a dwelling as a rooming and/or boarding house in a single family zone in the PUD was not a permitted use. Finally, Chappelle advised that D. Edrington would have to apply for both a conditional use permit and a text amendment in order to use the House as a "sober house."

32. On or about October 17, 2008, Cassie Coleman ("Coleman"), Assistant County Attorney of the County sent a letter to Hoffner stating that regardless of whether the residents of the House are a protected class, the current use of the House constitutes use as a boarding or rooming house. She stated that such use was not permitted under the PUD, but could be allowed if SPSL obtained a "text amendment including 'boarding or rooming houses' in the PUD's list of allowed uses, and a conditional use permit allowing the use of this property for the purpose SPSL intends."

33. On or about December 5, 2008, the BOCC initiated a lawsuit in the District Court of Garfield County, State of Colorado, naming D. Edrington and C. Edrington as defendants. The BOCC also sought injunctive and declaratory relief to enforce its classification of the House as a rooming/boarding house.

alcoholism and drug addiction. He further advised Chappelle that the BOCC's anticipated enforcement of the County's Code against D. Edrington for using the House as a "sober house" constituted illegal discrimination under the FHA and ADA.

30. On or about July 2, 2008, Chappelle responded to Hoffner's April 21, 2008 letter. Chappelle informed him that independent of whether the House residents were protected under the ADA or FHA, the BOCC considered the use of the House to be that of a boarding or rooming house.

31. Chappelle further stated that the House was located in the PUD, which is zoned single family use. Chappelle further advised that the use of a dwelling as a rooming and/or boarding house in a single family zone in the PUD was not a permitted use. Finally, Chappelle advised that D. Edrington would have to apply for both a conditional use permit and a text amendment in order to use the House as a "sober house."

32. On or about October 17, 2008, Cassie Coleman ("Coleman"), Assistant County Attorney of the County sent a letter to Hoffner stating that regardless of whether the residents of the House are a protected class, the current use of the House constitutes use as a boarding or rooming house. She stated that such use was not permitted under the PUD, but could be allowed if SPSL obtained a "text amendment including 'boarding or rooming houses' in the PUD's list of allowed uses, and a conditional use permit allowing the use of this property for the purpose SPSL intends."

33. On or about December 5, 2008, the BOCC initiated a lawsuit in the District Court of Garfield County, State of Colorado, naming D. Edrington and C. Edrington as defendants. The BOCC also sought injunctive and declaratory relief to enforce its classification of the House as a rooming/boarding house.

34. On or about December 18, 2008, Steven Polin ("Polin"), an attorney for SPSL, sent a letter to Coleman concerning the use by SPSL of the House as a residence for recovering alcoholics and substance abusers. In that letter, Polin requested that the BOCC make the following reasonable accommodations pursuant to the FHA: (1) to treat SPSL's use of the House as a single family use; (2) to reconsider its decision to classify the House as a rooming/boarding house; and (3) to hold in abeyance any contemplated enforcement action until the BOCC considered SPSL's request under the FHA for a reasonable accommodation, which would permit the residents to continue using the House and vitiate any concerns of impending eviction.

35. In response to the requests for a reasonable accommodation, Coleman requested that the BOCC be given until January 6, 2009, to respond. The BOCC never provided any further response to the reasonable accommodations request.

36. On or about January 26, 2009, Chappelle wrote to Hoffner advising that he had witnessed a possible rooming/boarding house violation taking place at the House. Chappelle stated that the County has "concerns for public safety and zoning regulations which [sic] have gone unattended." Chappelle informed Hoffner that he had three (3) days from receipt of the letter to institute a "Takings Application" before the BOCC.

37. On or about February 3, 2009, the BOCC filed an amended complaint in District Court of Garfield County, State of Colorado, against Plaintiffs D. Edrington and C. Edrington. In its amended complaint, the BOCC sought injunctive and declaratory relief to enforce its classification of the House as a rooming/boarding house.

38. On or about July 13, 2009, Plaintiff D. Edrington filed an application with the Planning Department and for a text amendment to the PUD (the "First Application").

Specifically, D. Edrington sought to amend the PUD by adding a "sober house" classification as a permitted use by right in the PUD.

39. Specifically, in the First Application, D. Edrington proposed a text amendment to the PUD to allow a "sober house" as a permitted use by right within the PUD and proposed the following definition of sober house:

> A single family dwelling occupied by no more than 10 persons who are not related by blood, marriage or adoption who are in recovery from chemical dependency, in which the residents willingly submit to rules and conditions intended to encourage and sustain recovery. The residents of a sober house are similar to a family unit and share kitchen and bathroom facilities and other common areas of the dwelling. Sober houses do not provide services to residents, including, without limitation, mental health services, clinical rehabilitation services, social services or other health care services, other than basic information referrals.

40. D. Edrington requested a waiver of certain criteria that SPSL was required to meet under the Code. D. Edrington did not receive a response to this request. The Planning Department reviewed the First Application and prior to the public hearing submitted its staff report (the "First Staff Report") to Plaintiffs. In the First Staff Report, the Planning Department stated that the proposed use was most similar to a "group home" and that the Code allowed for the establishment of "group homes" in single family zones subject to a limited review. A "Group Home Facility" is defined as "[a] facility operated by a public, nonprofit, or private agency, which [sic] provides care or supervision of persons who are not related by blood, marriage or adoption, to the facility's owner, operator, or manager."

41. Upon information and belief, the "limited review" the Code allows for "group home facilities" requires the County to determine: (1) whether the "group home facility" is

within 300 feet of another such facility; and (2) whether the location and operation of the group home facility constitute a direct threat to the health, safety, or welfare of the community.

42.     In the instant case, the House is not used as a "group home" and the Code's definition of "group home facility" does not fit the current use of the House.

43.     The First Staff Report recommended that the First Application be denied because it failed to meet the criteria to grant a text amendment. In addition, the County staff found that the proposed text amendment was not in the best interest of the health, safety, morals, convenience, order, prosperity, and welfare of the citizens of the County.  The County based its finding upon the numerous letters received from residents of the PUD who opposed approval of the text amendment.  Many of the letters expressed discriminatory animus towards the residents of the House based upon stereotypical characterizations of persons in recovery from alcoholism and drug addiction.

44.     On or about November 17, 2009, Polin wrote a letter to Tom Veljic, a member of the Planning Department and author of the First Staff Report.  Polin requested that the County make a reasonable accommodation pursuant to the FHA by either treating the residents of the House as a "single family" or waiving certain criteria and standards being applied to evaluate and deny the First Application.  Polin did not receive a response to his request.

45.     On or about December 9, 2009, the Planning Commission held a hearing on the First Application.  At the hearing, counsel for D. Edrington orally requested that the Planning Commission make a reasonable accommodation pursuant to the FHA in the form of a waiver of certain criteria used to evaluate the text amendment application.

46.     During the public comment portion of the hearing, there was considerable opposition to the text amendment expressed by the residents of the PUD which reflected discriminatory animus towards the residents of the House based on their disability.

47.     At the end of the hearing, the Planning Commission stated that it recommended that the BOCC, at the upcoming hearing, deny the First Application. The Planning Commission refused to consider, discuss, or grant D. Edrington's request for a reasonable accommodation. Additionally, during the hearing, members of the Planning Commission expressed discriminatory viewpoints that were similar to those expressed by the residents of the PUD opposed to the application.

48.     On February 1, 2010, the BOCC heard the First Application. Despite the Planning Commission's recommendation to deny the First Application, D. Edrington requested through his counsel that the BOCC grant the application or allow D. Edrington to amend the application.

49.     The BOCC stated that it generally follows the recommendations of the Planning Commission and that if D. Edrington sought to amend its application, it would have to go through the review by the Planning Department and receive a recommendation from the Planning Commission.

50.     On or about July 14, 2010, D. Edrington re-applied for a text amendment to the PUD to add "sober house" as a conditional use (as opposed to a use by right, as in the First Application) in the PUD using the same definition proposed in the First Application (the "Second Application"). D. Edrington also proposed the addition of "sober house" as a conditional use within the PUD and certain spacing requirements between sober houses, should the conditional use be added to the PUD.

51. Additionally, in the Second Application, D. Edrington again requested reasonable accommodation in the form of a waiver of certain criteria and standards SPSL was required to meet under the Code.

52. Plaintiffs did not receive a response to the request for reasonable accommodation.

53. Following review of the Second Application, the Planning Department's staff prepared its staff report (the "Second Staff Report") regarding the Second Application for presentation by the Planning Commission at a public hearing.

54. In the Second Staff Report, the Planning Department reiterated its prior finding that the proposed "sober house use" was most similar to a "group home" under the Code.

55. The Second Staff report contained a recommendation that Second Application be denied because it failed to meet the criteria in order to grant a text amendment and the opinion that the proposed text amendment is not in the best interest of the health, safety, morals, convenience, order, prosperity, and welfare of the citizens of the County. The referenced recommendation was based upon the numerous letters received from residents of the PUD who opposed approval of the Second Application. Many of the letters expressed discriminatory animus against persons in recovery from alcoholism and drug addiction.

56. On or about November 10, 2010, the Planning Commission held a public hearing on the Second Application. The Planning Commission determined that it would recommend that the BOCC deny the Second Application. Counsel for D. Edrington orally requested that the Planning Commission make a reasonable accommodation pursuant to the FHA by waiving or modifying the criteria being used to evaluate Second Application.

57. During the public comment portion of the hearing, residents of the PUD expressed considerable opposition to the Second Application that reflected discriminatory

animus towards the residents of the House based on their disability.  Many of the neighbors of the House expressed discriminatory animus based upon stereotypical characterizations of persons in recovery from alcoholism and drug addiction.

58. On more than one occasion during the course of the public hearing the Planning Commission went into closed session for impermissible purposes in violation of the Colorado Open Meetings Act, Colo. Rev. Stat. § 24-6-402.

59. Neither the Planning Commission nor the BOCC have a procedure for processing requests for a reasonable accommodation in the zoning context pursuant to the FHA.

60. The effect of Defendant's actions has been to prevent Plaintiffs from residing at the dwelling of their choice or in any other home zoned for single family use in the County.

61. Plaintiffs are aggrieved persons under 42 U.S.C. §§ 3602(d) and (I), who have been injured by Defendant's discriminatory conduct and have suffered damages, economic loss and a loss of civil rights as a result of Defendant's conduct.

62. The House is a dwelling within the meaning of § 802(b) of the FHA, 42 U.S.C. § 3602(b).

63. The effect of Defendant's actions is to deny needed housing opportunities to recovering alcoholics and substance abusers who are disabled under the FHA within the County.

64. The effect of the conduct of the Defendant is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district in within the County.

65. Defendant is treating the residents of the House in a discriminatory fashion and is imposing far more stringent requirements on this group of unrelated disabled individuals than on others.

66. By classifying the premises described above as a prohibited use in residential zones in the County, Defendant is arbitrarily and illegally making single family housing unavailable to disabled persons recovering from drugs and alcohol addiction.

67. Defendant has acted under color of the law of the State of Colorado in enforcing the Code with the purpose and effect of discriminating against Plaintiffs solely because of their handicap and disability.

68. Plaintiffs are living in fear of losing their home and are suffering anxiety, emotional distress, pain, setbacks in their efforts at recovery, and other irreparable harm as a result of Defendant's actions.  They have no adequate remedy at law.

69. Defendant has denied Plaintiffs' rights to due process of law by its arbitrary classification of the House.

70. Defendant has failed to further the objective of providing fair housing under the FHA in arbitrarily administering its Code.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Discrimination Under the FHA)

71. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 70 above.

72. Defendant is violating Plaintiffs' rights under the FHA and its implementing regulations by:

    a. denying and otherwise making housing unavailable to Plaintiffs because of their disability;

  b. using the County Zoning Code and regulations of the PUD as a pretext to exclude Plaintiffs because of their disability;

  c. enforcing discriminatory zoning rules and policies on Plaintiffs because of their disability;

  d. interfering with the right of Plaintiffs to live in the dwelling of their choice;

  e. failing to make reasonable accommodations in the Code and its application to afford Plaintiffs an equal opportunity to use and enjoy the House; and

  f. retaliating against Plaintiffs because of their exercise of their legal rights under the FHA.

## SECOND CLAIM FOR RELIEF
### (Discrimination Under the ADA)

73. Plaintiffs reallege and incorporate herein by reference paragraphs 1 through 73 above.

74. Plaintiffs SPSL, C. Edrington, and D. Edrington are all involved in the process of providing housing to people with disabilities as defined in 42 U.S.C. § 12102(2).

75. Plaintiffs Colins and Tipton are individuals with a disability, as defined in 42 U.S.C. § 12102(2), living at the House.

76. Defendant is a public entity, within the definition of 42 U.S.C. § 12131(1).

77. The actions of Defendant to exclude the residents of the House from single family residential zones violate Plaintiffs' rights under the ADA and the regulations promulgated thereunder by:

      a.    denying the individual disabled Plaintiffs the opportunity to participate in or benefit from the supportive housing program SPSL offers;

      b.    using and administering land use ordinances with the purpose and effect of subjecting Plaintiffs to discrimination based on their disability;

      c.    subjecting Plaintiffs to discrimination on the basis of their disability;

      d.    denying disabled Plaintiffs the opportunity to participate in a program in the most integrated setting appropriate to their needs in a manner discriminatory against Plaintiffs and different from the opportunities presented to non-disabled individuals;

      e.    utilizing licensing and permit requirements to enforce the Code and deny Plaintiffs enjoyment of rights, privileges, advantages, and opportunities enjoyed by non-disabled individuals in a manner that is discriminatory against Plaintiffs;

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court:

1.    Enter a declaratory judgment that Defendant has illegally discriminated against Plaintiffs in violation of the FHA and ADA by arbitrarily and capriciously applying its Code to the occupancy of the House by groups of disabled recovering alcoholics and addicts, thereby causing a disparate impact upon Plaintiffs' use and enjoyment of a dwelling;

2.    Provide injunctive relief restraining Defendant from discriminating against Plaintiffs and interfering with Plaintiffs' current operation of the House as a home for disabled recovering alcoholics and substance abusers, and/or from interfering in Plaintiffs' rights to reside in the House;

3.    Enter a declaratory judgment stating that Plaintiffs' use of the House as a "sober house" is consistent with classification of the premises as a single family dwelling, and requiring

Defendant to apply all zoning, safety, building, and land use codes to Plaintiffs' use of the House in the same manner as it does to all other single family dwellings;

4. Award compensatory damages;

5. Grant an award of reasonable costs and attorneys fees; and,

6. Order other such other relief as the Court deems just and proper.

Dated this 4th day of February, 2011.

Respectfully submitted,

**LATHROP & GAGE LLP**

*s/ Michelle E. Cormier*
MICHELLE E. CORMIER, No. 39917
ELIZABETH J. PEROS, No. 35462
STEFANIE SOMMERS, No. 40051
US Bank Tower
950 Seventeenth Street, Suite 2400
Denver, Colorado 80202
(720) 931-3200 (Phone)
(720) 931-3201 (Fax)
Email: mcormier@lathropgage.com
eperos@lathropgage.com
ssommers@lathropgage.com

*Attorneys for Plaintiffs St. Paul Living, LLC, Chris Edrington, Donald Edrington, Adam Tipton, and Alex Colins*