IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-00303-RBJ-MEH

ST. PAUL SOBER LIVING, LLC,
CHRIS EDRINGTON,
DONALD EDRINGTON
ADAM TIPTON, and
ALEX COLINS,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, GARFIELD COUNTY, STATE OF COLORADO,
a political subdivision of the State of Colorado, and
SPRING VALLEY SANITATION DISTRICT, a Colorado metropolitan district,

    Defendants.

---

ORDER

---

This order addresses nine pending motions. Except as specifically noted in this order, the Court will not be in a position to consider additional motions in this case. The case is set for a five-day jury trial beginning August 6, 2012.

**FACTS**

According to the Second Amended Complaint [#55], St. Paul Sober Living, LLC ("SPSL") is a Minnesota limited liability company that provides affordable housing and support to individuals with disabilities including those who are recovering from substance abuse including alcoholism. Adam Tipton and Alex Colins are disabled individuals who reside at a residence ("the House") in Glenwood Springs, Garfield County, Colorado. Chris Edrington is a principal of SPSL and has an ownership interest in the House. Donald Edrington also has an ownership interest in the House.

Plaintiffs allege that in 2007 SPSL rented the House from Donald Edrington for use as a "sober house." This was a facility that provided support, but not counseling or therapy, for people in recovery. Plaintiffs allege that the residents live "as a family," make group decisions, and relate to each other "as the functional equivalent of a single family." Second Amended Complaint ¶22.

In 2008 a Garfield County zoning code enforcement officer advised Mr. Edrington that a sober house business is not permitted in Garfield County without a special use permit, and that Mr. Edrington had 30 days to bring the House into compliance with the code. SPSL responded, through counsel, that enforcement of the code against Mr. Edrington for using the House as a sober house would constitute discrimination in violation of two federal statutes, the Fair Housing Act and the Americans with Disabilities Act.

The zoning officer replied that the Board of County Commissioners of Garfield County ("BOCC") considered the House to be a boarding or rooming house, and that the House was located in a Planned Unit Development ("PUD") zoned for single family use. This opinion was confirmed by an Assistant County Attorney, although she added that the use could be allowed if SPSL obtained an amendment adding "boarding or rooming houses" to the PUD's list of allowed uses and obtained a conditional use permit.

Those steps apparently were not taken, and in December 2008 the BOCC filed a suit in state court against the Edringtons seeking injunctive and declaratory relief. SPSL, through counsel, then requested that the BOCC make "reasonable accommodations," namely (1) to treat the House as a single family use; (2) to reconsider its decision to classify the House as a rooming or boarding house; and (3) to hold enforcement action in abeyance until the BOCC acted on this request. However, the BOCC did not respond.

In February 2009 the BOCC filed an amended complaint in state court, again seeking injunctive and declaratory relief. In July 2009 Donald Edrington filed an application for a text amendment of the PUD to classify a sober house as a permitted use. He also requested a waiver of certain criteria that SPSL was required to meet under the code. He received no response to the latter request. The Planning Department reported that the proposed use was similar to a "group home" which the code allowed in single family zones subject to a determination (1) whether it was within 300 feet of another such facility, and (2) whether the facility constitutes a direct threat to the health, safety, or welfare of the community. However, according to the plaintiffs, the House is not used as a "group home." In any event, the Planning Department staff recommended that the application for a text amendment be denied, allegedly based upon letters from citizens allegedly based upon discriminatory animus, in turn based upon stereotypes of persons in recovery.

In November 2009 counsel again requested a "reasonable accommodation" by treating the residents of the House as a single family or waiving certain requirements. There was no response. The request for the accommodation was again made by Donald Edrington at a Planning Commission hearing in December 2009. Once again considerable public opposition was expressed. The Planning Commission recommended that the BOCC deny the application, and members of the Commission allegedly expressed discriminatory viewpoints. At a hearing in February 2010 the BOCC indicated that it generally followed the Planning Commission's recommendations, but that Mr. Edrington could amend his application and receive another recommendation.

In July 2010 Mr. Edrington re-applied for a text amendment to the PUD, this time to add a "sober house" as a conditional use. He again requested certain "reasonable accommodations."

The Planning Department staff again found that the proposed sober house use was similar to a group home under the zoning code, and it recommended that the second application be denied. According to plaintiffs, this recommendation was again based upon public comments expressing discriminatory animus. In November 2010 the Planning Commission held a hearing on the second application and again decided to recommend to the BOCC that the application be denied, allegedly based upon public opposition.

Also in November 2010 the administrator of the Spring Valley Sanitation District ("SVSD"), a sewer service district, advised the Planning Department that the use of the House as a sober house would have to be reviewed by the SVSD; that the proposed text amendment would require rezoning of the Los Amigos PUD; and that SVSD could not support such a rezoning. The SVSD advised Mr. Edrington that it had determined that the House was not being used as a single family residence, and that SVSD would retroactively apply commercial rates to the property. It assessed $3,864 in additional tap fees and a past due service charge of $244.80.

In May 2011, despite Mr. Edrington's repeated request for "reasonable accommodations," the BOCC unanimously voted to deny the text amendment. Also in May 2011 SPSL, through counsel, requested a "reasonable accommodation" from the SVSD, namely, to reconsider its decision to classify the House as a commercial use, and instead, to treat the House as a single family use. The request for the accommodation was not formally answered but has effectively been denied.

Plaintiffs filed this suit on June 15, 2011 and filed their Second Amended Complaint on January 17, 2012. In their first claim for relief they assert a violation of the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988 ("FHA), 42 U.S.C. § 3601 et seq.("FHA"). Section 3604(f) makes it unlawful:

> (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--(A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.
>
> (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person.

Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. §3604 93)(B). The FHA's prohibitions apply to discriminatory zoning practices. *Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1498 (10th Cir. 1995).

In their second claim for relieve plaintiffs assert that both defendants have violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Title II of the ADA provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Accordingly, a plaintiff must show (1) that he is a qualified individual with a disability (2) who was subjected to discrimination by a public entity (3) by reason of his disability. Title II requires public entities to make reasonable accommodations for the disabled. *See, e.g., Thompson v. Colorado,* 278 F.3d 1020, 1029 (10th Cir. 2001). The ADA's prohibitions apply to discriminatory zoning practices. *See, e.g., Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37, 44 (2nd Cir. 1997).

## CONCLUSIONS

**Defendant Spring Valley Sanitation District's Motion to Dismiss [#37]: DENIED**

This motion became moot upon plaintiffs' filing their Second Amended Complaint.

**Defendant Spring Valley Sanitation District's Motion to Dismiss Plaintiffs' Second Amended Complaint [#61]: DENIED**

This motion became moot upon this defendant's filing its Motion for Summary Judgment.

**Motion for Summary Judgment of Defendant Board of County Commissioners of Garfield County, State of Colorado [#70]: DENIED**

The BOCC's motion for summary judgment is presented in the form of a two-page motion [#70], a 32-page brief supported by seven exhibits comprising 123 pages [#71] and an 11-page reply brief accompanied by nine exhibits comprising 44 pages [#103]. Sandwiched in between those pleadings is plaintiff's 47-page response [#90] supported by 19 exhibits comprising 288 pages [#91]. The motion treats the requirements for an FHA and an ADA claim as essentially the same, and the Court accepts that overlap for present purposes.

The Court finds, based upon its review of the parties' briefs, that there are genuine issues of material fact in dispute. These factual issues include, but are not necessarily limited to, the following:

- Is the House a "group home facility"?
- If so, is the House within 300 feet of another such facility, and is it a direct threat to the health, safety and welfare of the community?

- Were the County's application of its zoning rules and its denial of the requests for "reasonable accommodations" based upon a legitimate, non-discriminatory interest (such as protection of the health, safety and welfare of the community) or by discrimination against the plaintiffs by reason of the disabilities of the residents of the House? In other words, were the reasons given for the actions taken by the BOCC pretextual? As one example of a reason given that may or may not have been pretextual, was the BOCC's decision motivated by the lack of an adequate water supply, or was that reason pretextual?

The Court expresses no opinion regarding these questions, nor does it express any opinion regarding the merits of plaintiffs' claims. Likewise, this order does not establish what specific instructions must be given to the jury in this case. This order only reflects the Court's finding that the claims against the BOCC are not appropriate for summary disposition.

The Court expects counsel to meet and confer in good faith with the goal of reaching stipulations, to the maximum extent possible, on jury instructions and a verdict form, and to have specific proposals for instructions and verdict forms to the extent stipulations cannot be reached, before the Trial Preparation Conference scheduled for July 13, 2012. Please note that the Court does not want or need stock preliminary jury instructions concerning how a trial works. The only "stock" instructions that the Court will need are an instruction setting forth a brief statement of the parties' respective positions and instructions concerning such standard things as burden of proof, credibility, number of witnesses, not to base a decision on sympathy or prejudice, etc. Please focus your conference and preparation for the Trial Preparation Conference on the elements of the claims, definitions of key terms, the relief plaintiffs' are seeking, any appropriate affirmative defenses, and a verdict form.

**Defendant Spring Valley Sanitation District's Motion for Summary Judgment [#104]: DENIED**

In view of the proximity of trial and the parties' need for decisions, the Court has elected to include this motion in this order, even though the time for the moving party to file a reply brief has not yet expired. If SVSD believes that it has significant evidence or an argument that has not been presented which would have been addressed in a reply, it may file a short motion to reconsider limited to that new information. The Court will consider any such new information with an open mind.

The SVSD's position can be simply stated. It provides sewage service to customers with the district and assesses charges based upon usage, i.e., the impact of a given property on the sewer system. Its unit of measurement of usage is the "equivalent residential unit" or "EQR," which is based on the estimated amount of sewage produced by a single family residential unit. The EQR for a single family residential unit is set at 1.0. The district physically lacks the ability to measure the actual amount of sewage that leaves a particular residence. Therefore, it looks to the residence's water usage in non-irrigation months to determine whether it is greater than a typical user. In March 2011 the district reviewed the House's average water usage and found that it totaled 1.3 EQR. Therefore, it assessed an additional 0.3 tap fee totaling $3,844, and assessed $244.80 in past due service charges. These decisions were based solely on the numbers and had nothing to do with who the user was.

If those facts are correct, and if that is the "whole story," then I would agree that plaintiffs have no viable FHA or ADA claim against SVSD. However, I am not persuaded that there are no material facts genuinely in dispute such that this decision can be made as a matter of law at this time.

I note, first, an inconsistency in the district's own presentation of the "undisputed" facts. It states that it has never treated the House as anything other than a single family residence for sewage purposes. Motion [#104] at 6, ¶26. However, in her April 19, 2011 letter to Donald Edrington explaining the increased tap fee, the district administrator said, "[b]ecause the Property is no longer used as a single family residence, the Board of Directors has been reviewing the water use for the property . . . ." *Id.* at 8, ¶35.

Even more basically, plaintiffs have come forward with evidence that, if believed, might support a finding that the alleged excessive usage was a pretext for the recalculation of the tap and service fees. In their response to the motion [#118], plaintiffs have presented evidence that, if believed by the jury, suggests that the majority of the members of the SVSD board were members, and in one instance an officer of, the local homeowners' association. There is some evidence that the at least some members of the homeowner's association, including the member who was an officer of the association and a member of the SVSD board, were strongly opposed to having a sober house in the neighborhood. An inference could be drawn from evidence presented by the plaintiffs in response to this and other motions that this opposition might have been motivated, in part, by the nature of the individuals and their addictions who were residing in the House, and that these feelings might have motivated the district's board to evaluate the House's use of sewage service.

Again, for emphasis, the Court is expressing no opinion as to the merits of plaintiffs' claims. Indeed, the seemingly small increase in the tap fee and the service charge makes one wonder "what all the fuss is about," that is, why this case has been complicated by the addition of the claims against the SVSD. Nevertheless, the question before the Court is simply whether

there is any genuine dispute of a material fact such that issues should be resolved in a trial rather than solely by the Court. I conclude that summary disposition is inappropriate.

**Plaintiffs' Motion for Summary Judgment as to Defendant Board of County Commissioners, Garfield County [#105]**

For the same reasons as were expressed in respect to motion #104, the Court elects to address the motion based upon the motion and response without awaiting a reply but grants plaintiff leave to file a motion to reconsider if it has new evidence or a new argument that it would have presented in a reply.

The BOCC disputes some of plaintiffs' corrected statement of undisputed facts and claims that some of them are not supported by admissible evidence. Response [#114] at 4-8. However, for present purposes I will assume without deciding that plaintiffs'59 "undisputed facts" [#106-2] at 2-10 are either undisputed or not genuinely disputed. I will also assume, without deciding, that all of these facts are relevant.

Nevertheless, for substantially the same reasons the Court gave for denying the BOCC's motion for summary judgment, the Court denies this motion. The key to this case is what has motivated the BOCC to take the positions it has taken, including its refusal to make what plaintiffs' contend are reasonable accommodations. Questions of that nature are inherently factual.[1]

---

[1] Once again, the mere volume of the presentation (a 42-page brief, actually 62 pages including the 20-page statement of material facts allegedly not in dispute, supported by 37 exhibits comprising nearly 500 pages) tends to diminish the likelihood that there are no genuinely disputed issues of material fact. I note this for the sake of persuasive advocacy, not as dispositive of the motion. The motion is denied because there plainly are genuinely disputed issues of material fact.

10

**Plaintiffs, St. Paul Sober Living and Chris Edrington's Corrected Statement of Material Facts Not in Dispute and Memorandum in Support of Summary Judgment [#106]: GRANTED.**

This is not truly a motion, but the Court deems it as a belated motion to correct an incomplete statement of allegedly undisputed facts and to correct the failure to file a timely supporting brief. Plaintiff's explanation for the late filing of a brief in support of its motion and the "corrected" statement of allegedly undisputed facts, *see* response to motion to strike [#119] is thin. The Court would much prefer counsel's admitting that they did not get their act together in time to meet the deadline.

However, in the context of the flood of motions and exhibits that the Court is grappling with, the filing of one more set of papers one day late is not a capital offense. The BOCC has not been prejudiced. As such, the Court grants the motion despite its untimeliness.

**Defendant Board of County Commissioners' Motion to Strike Plaintiffs' Statements and Attachments Thereto Untimely Filed on June 2, 2002 [#107]: DENIED**

For the same reasons that the Court granted motion #106 the Court denies this motion.

**[Defendant Board's] Motion to Strike Expert and Motion for Sanctions [#115]: DENIED.**

Defendant did not request a hearing, and the Court therefore proceeds without a hearing. *See U.S. v. Nacchio,* 555 F.3d 1234, 1251 (10th Cir. 2009). The Court elects to address this motion without awaiting plaintiff's response, because the Court is satisfied from the motion itself and its review of the expert's report that the motion cannot be granted.

Expert opinion testimony is admissible if it is relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589, 594-95 (1993). The opinions are relevant if they

would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Ibid.*

The proponent of expert testimony has the burden to show that the testimony is admissible. *U.S. v. Nacchio,* 555 F. 3d at 1241.  The trial court plays a "gatekeeping" role.  This is not, however, a role that emphasizes exclusion of expert testimony.  Judge Kane aptly summarized the thrust of *Daubert* in interpreting and applying Rule 702:

> A key but sometimes forgotten principle of Rule 702 and *Daubert* is that Rule 702, both before and after *Daubert,* was intended to relax traditional barriers to admission of expert opinion testimony.  Accordingly, courts are in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony.  As the Advisory Committee to the 2000 amendments to Rule 702 noted with apparent approval, "[a] review of the caselaw after *Daubert* show that the rejection of expert testimony is the exception rather than the rule.

*Cook v. Rockwell Intern. Corp.,* 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citations omitted).

The Court finds that Mr. Regan has substantial expertise, based on education and experience, in the treatment of individuals with drug or alcohol addiction and with their recovery, including so-called "sober houses."  The Court finds that his opinions would be helpful to jurors' and the Court's understanding of these issues, which are not typically matters of common knowledge and experience.  The Court finds that the opinions are reliable in view of Mr. Regan's credentials and his hands-on experience.  His expertise has been recognized and honored, and he has apparently been qualified as an expert witness in two previous federal court trials.

However, his testimony will be strictly limited to the timely summary dated December 13, 2011 [#116-1].

**Unopposed Motion to Withdraw Michelle E. Cormier as Co-Counsel [#117]:**

**GRANTED**

### ORDER

1. Motion #37 is DENIED as moot.
2. Motion #61 is DENIED as moot.
3. Motion #70 is DENIED.
4. Motion #104 is DENIED.
5. Motion #105 is DENIED.
6. Motion #106 is GRANTED.
7. Motion #107 is DENIED.
8. Motion #115 is DENIED.
9. Motion #117 is GRANTED.

DATED this 5th day of July, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge