IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-00303-RBJ-MEH

ST. PAUL SOBER LIVING, LLC,
CHRIS EDRINGTON,
DONALD EDRINGTON
ADAM TIPTON, and
ALEX COLINS,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS, GARFIELD COUNTY, STATE OF COLORADO,
a political subdivision of the State of Colorado

      Defendant.

---

## ORDER on POST-TRIAL MOTIONS

---

This order addresses defendant Board of County Commissioner's motion for entry of judgment as a matter of law and other pending post-trial motions.  In a separate order the Court addresses the issue of injunctive relief.[1]

### CASE HISTORY AND BACKGROUND

St. Paul Sober Living, LLC purchased a house in a residential neighborhood near Glenwood Springs, Colorado and turned it into a "sober house."  A sober house serves as a transition home for individuals who have completed substance abuse treatment but are not yet ready to return to the community and instead voluntarily choose to live in a home with a small

---

[1] While these issues have been pending, the Board filed a notice of appeal.  Plaintiffs moved to dismiss the appeal as premature; and the Board responded that it agrees that its appeal was prematurely filed.  In an order issued September 11, 2013 the Circuit dismissed the appeal for lack of jurisdiction.  [Docket entry #202].

number of similar individuals.  The residents are expected to have jobs, obey curfews, abstain from alcohol and illegal substances, and generally support one another in their recovery.

The house involved in this case has a maximum occupancy of 10, including one manager, and a historical average occupancy of between seven and eight individuals.  It opened in November 2007 and has operated without incident since that time.  However, homeowners in the neighborhood (which is a wooded area with homes spaced widely apart) were upset when they learned that the home would be occupied by recovering substance abusers.  The County's zoning personnel informed the owners of the house, Donald and Christopher Edrington, that they could not operate a "group home" in that neighborhood.  The County denied plaintiffs' request for a zoning amendment.  Instead, the Board of County Commissioners sought an injunction and abatement order (and later civil penalties) in state court.

St. Paul Sober Living, its owners, and two of its residents then filed this federal lawsuit, alleging that the Board's refusal to make a "reasonable accommodation" amounted to discrimination based upon the residents' handicap (alcoholism) in violation of both the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq. and the Americans with Disabilities Act., 42 U.S.C. § 12101 et seq.[2]  The state court stayed its case pending the outcome of the federal suit.  This case was tried December 18-21, 2012 and submitted to the jury only on the Fair Housing Act claim.  The jury provided a "yes" answer to the question, "[h]ave the Plaintiffs proven by a preponderance of the evidence that the handicap of the residents of the sober house in Elk Springs, Garfield County, Colorado was a motivating factor for the Board of County Commissioners' application of the zoning code?" Jury Verdict [#149-9] at 1.  The jury also found that plaintiff St. Paul Sober Living, LLC had

---

[2] Plaintiffs later named the Spring Valley Sanitation District as an additional defendant, but those claims were resolved before trial.

proven its retaliation claim by a preponderance of the evidence, and that the Board's

discriminatory conduct had proximately caused St. Paul Sober Living, LLC, but not the

individual plaintiffs, to sustain money damages. *Id.*at 2. The jury awarded $400,000 to St. Paul

Sober Living, LLC and nominal damages of $1.00 to the individual plaintiffs. *Id.*

After the verdict was taken and the jury was discharged, counsel for the plaintiff made an

oral motion that the Court enter a permanent injunction against the Board of County

Commissioners "to prevent them from enforcing their zoning code in any way, shape, or form

against St. Paul Sober Living." Transcript, December 21, 2012 [#154] at 37 (page 769 of the

trial transcript).[3] Defense counsel suggested that injunctive relief should be resolved in the state

court case. The Court did not agree but stated, "Well, what has happened here is that the jury has

found that there was discrimination. I think we need to be a little bit careful about how that

injunctive order is worded." *Id.* Plaintiffs' counsel indicated that he would submit a proposed

written order. *Id.* The Court then added, "But it is clear to me and I will order, subject to a -- the

submission of a written proposed order that should be submitted to the defense counsel first and

approved, at least as to form, that the Board of County Commissioners must be and now is

enjoined from enforcing its zoning code in a way that would require the sober living house to be

removed." *Id.* at 37-38 (transcript pages 769-70).

On December 28, 2012 the Clerk's Office entered a "Final Judgment" incorporating the

jury verdict and the Court's oral ruling at the conclusion of the trial. [#150]. On January 28,

2013 the Board filed a motion for judgment as a matter of law, to which it also refers as a motion

for judgment notwithstanding the verdict [#163].[4] That motion has subsequently been briefed,

---

[3]   The transcript is erroneously dated December 20, 2012.
[4]   The Board's counsel moved for judgment as a matter of law under Fed. R. Civ. P. 50 at the conclusion of the
plaintiffs' case, which the Court denied after hearing argument from both sides. Transcript [#153] at 27-54
(transcript pp. 526-53). At the conclusion of the defendant's case the Court indicated that its rulings on the motion

and several other motions discussed later in this order were also filed and ultimately briefed. Meanwhile, the parties had not tendered a form of a written permanent injunction as had been requested by the Court.

On June 20, 2013 the Board, noting that it had remained in compliance with the Court's "temporary injunction" but that plaintiffs had still not filed a proposed form of written injunction order, filed its own proposed form of order.  [##194 and 194-1].  The following day plaintiffs filed their form of a proposed injunction order.  [#195].  On the same day, June 21, 2013, the Board filed its notice of appeal.  [#196].

## ORDERS ON THE PENDING MOTIONS

### [Defendant's] Motion for Judgment as a Matter of Law [docket #163]: DENIED.

The Board broadly argues that the damages award was not supported by any evidence in the record.  In addition the Board argues that the verdict was the result of multiple errors of law, including the giving of erroneous jury instructions; the use of an improper verdict form; the admission of incomplete evidence; and, in one instance, the admission of evidence that should have been excluded under the hearsay rule.

1. <u>Damages Evidence</u>.  Although the primary focus of this case was whether St. Paul Sober Living could remain in the Elks Springs home, plaintiffs did present evidence of monetary loss or damage:

- Christopher Edrington, the co-owner, testified that Colorado Mountain College wanted to do a joint venture with St. Paul Sober Living whereunder residents could go to school and work towards a degree while they were in recovery.  The initial proposal was for a 24-month period, which Mr. Edrington believed would probably

---

remained the same. *Id.* at 155 (transcript p. 654).  The pending motion is a renewal of the motion for judgment as a matter of law as permitted by Rule 50(b).  The Board did not include an alternative request for a new trial.

have been "the beginning of it."  He estimated that the venture would have paid $8,000 to $10,000 a month to St. Paul Sober Living, which would mean payments in the range of $192,000 to $240,000 over a 24-month period.  However, the College ultimately decided that it couldn't do that, because it depended upon marketing which could be adversely impacted by the Board's suit.  Transcript [#152] at 205-07 (transcript pp. 370-72).

- He also testified that he located another property that he wanted to purchase and use for a sober house just outside the entrance to Carbondale but within the boundaries of unincorporated Garfield County.  He said that he could not do it because he would be dealing with the same Board that had sued St. Paul Sober Living.  *Id.* at 205 (transcript p. 370).  He did not attempt specifically to quantify the income that might have been generated by a sober house on that property.

- However, Ben Nelson, who provides the bookkeeping services for St. Paul Sober Living, did an analysis of revenue that would have been earned if St. Paul Sober Living had opened one new house in 2010, 2011 and 2012.  His estimate is that that would have generated income in excess of $200,000, based upon an 86% occupancy rate (he approximated occupancy of existing houses at 81%) and expenses comparable to the Elk Springs house.  He believes competitors are opening new sober houses in Colorado.  *Id.* at 144-45 (transcript pp. 309-10).  One could infer that one new house would generate income in the range of one-third of that amount.

- Mr. Nelson also testified that he believes the Elk Springs house has lost revenue of approximately $133,000 because its occupancy rate has been adversely affected by the dispute with the Board.  He based that opinion on a comparison of the Elk Springs

house to St. Paul Sober Living's other Colorado house, which is in Carbondale.  *Id.* at 142-43 (transcript pp. 307-08).  Christopher Edrington testified that he agreed with that figure as a probable loss at Elk Springs over five years resulting from the dispute.  *Id.* at 211 (transcript p. 376).  He testified that "definitely" there are people who have chosen not to go to that particular house, such as a couple of instances where children from affluent families did not want to risk press coverage.  *Id.*

- Mr. Nelson also testified that St. Paul's costs incurred for Chris Edrington's travel and lodging for trips to and from Colorado from his home in Minnesota to deal with "the legal matter" were approximately $15,000.  *Id.* at 142 (transcript p. 307).

- Chris Edrington estimated that he has spent something like 20 hours per month on average on the dispute with the Board, and he estimated his compensation (salary plus benefits) at about $50 per hour.  *Id.* at 208-10 (transcript p. 373-75).

- In its response to plaintiffs' motion for an award of attorney's fees, the Board suggests that the jury found that the Board's state court lawsuit was an act of retaliation against the plaintiffs and speculates that the jury included that factor in awarding $400,000 to the plaintiffs.  [#177 at 6].  I am not impressed with this argument, but it does put the Board in a difficult position when it argues that the evidence did not support an award of damages.

These figures do not add up precisely to $400,000.  Depending upon which parts of the evidence the jury found to be persuasive, the monetary loss could add up to less or more than that figure.  However, as the jury was properly instructed: "Difficulty or uncertainty in determining the precise amount of any damages does not prevent you from deciding an amount.  You should use your best judgment based on the evidence."  Jury Instruction No. 25.

I note that while this part of the motion focuses on damages evidence, the Board later essentially argues that there was insufficient evidence to support the jury's finding of liability. The Board argues, as it did at trial, that the Board denied the application because of the Edringtons' refusal to comply with all of the requirements of the County's land use regulations, not because of any discrimination, and that plaintiffs presented no evidence that they were treated differently in that regard than any other similarly situated persons. Of course, there were no similarly situated persons – this was the first and only sober house in Garfield County. Whether the handicap of the residents of the sober house was a motivating factor in the Board's decision, or instead the Board was motivated solely by non-discriminatory reasons such as the inability of the sober house to satisfy all of the requirements of the zoning code or the land use regulations, was precisely the issue presented by the case. The jury found that unlawful discrimination was a motivating factor. The Court was satisfied then, and remains satisfied today, that there was substantial evidence in the record on which a rational jury could so find.

    2.  <u>Instructions and Verdict Form</u>.

*Jury Instruction No. 40*

The Board argues that the Court should have given its proposed "Jury Instruction No. 40." The essence of that proposed instruction is that damages must be based upon substantial evidence, not speculation, and that each plaintiff must prove a specific dollar amount that he or it lost. The Board cites *Foote v. Utah,* 4 F. App'x. 687 (10th Cir. 2001).

In the first place, this argument is not based upon a proper record, and that alone is dispositive. The respective parties presented voluminous piles of proposed jury instructions at a pretrial conference on July 13, 2012, and there was preliminary discussion of instructions and verdict forms at that time. Transcript [#127] at 18-73. However, the record on the instructions

that the parties brought to the trial begins at 5:24 p.m. on the second day of trial and continued until 7:15 that evening.  Transcript [#152] at 278-333 (transcript p. 443-497).  The instruction conference continued and was completed on the third day of trial.  Transcript [#153] at 157-190 (transcript pp. 656-89).  Once the final set of jury instructions was determined, the Court reminded the parties to tender any additional instructions that the Court had not agreed to give to complete their record.  *Id.* at 189 (transcript p. 688).  After the jury retired, the Court brought up the subject again, and the Board's counsel indicated that she was tendering "defendant's instructions nos. 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 30."  *Id.* at 230 (transcript p. 729). The Court noted that it might be confusing to have tendered instruction numbers overlapping with the jury instructions actually given and suggested that the Board's tendered instructions be renumbered starting with tendered instruction 1.  *Id.*  That was done, and the Board's counsel submitted "Defendant's Proffered Instructions" Nos. 1 through 10, each of which was marked "Tendered but rejected" and signed by the Court.  The instruction that the Board now argues should have been given, its "Jury Instruction No. 40," was not included in the group of tendered but rejected instructions.

Even had the Board preserved its argument regarding what it calls Jury Instruction No. 40, however, I do not agree that the instruction should have been given.  The part of the proposed instruction that would require that the jury find that plaintiffs prove actual damages proximately caused by the defendant's acts, based upon substantial evidence and not speculation, was covered in Jury Instruction No. 25 as actually given.  The part of the instruction that would require plaintiff to prove a specific dollar amount is not supported by the case she cites, *see generally Foote,* 4 F. App's 687, and is not a correct statement of the law.

*Verdict Form*

The Board complains that the verdict form instructed the jury to award at least nominal damages.  Assuming without deciding that the Board's objection to this aspect of the verdict form was properly preserved (but no citation to the record was provided, and no alternative form of verdict was tendered with the tendered but rejected instructions), and assuming as well that there is law supporting the Board's position (but the *Foote* case cited by the Board suggests the contrary), the harm to the Board is trivial – awards of nominal damages in the amount of $1.00 each to four individual plaintiffs.

*Tendered but Rejected Instructions 2, 3 and 4*

The Board argues that the Court should have given its tendered but rejected "Proffered Instructions" 2, 3 and 4.  Proffered Instruction 2 suggests that even if the jury determines that the residents' handicap was a factor motivating or playing a part in the defendant's actions, the jury must consider any other reason given by the defendant for its actions.  Proffered instruction 3 would have instructed, in part, that the jury must find for the defendant if there was a "genuine public interest concern for the challenged practice."  Proffered instruction 4 would have instructed the jury that in order to show intentional discrimination, plaintiffs must prove that group homes for persons who are not handicapped are permitted in Garfield County but are not subjected to the same "onerous requirements" that were applied to the plaintiffs.  None of these tendered instructions, as worded, is a correct statement of the law.  Rather, Jury Instructions No. 16 and 17 as given are based on the applicable law.

*Tendered but Rejected Instructions 8 and 9*

The Board also complains that the Court improperly refused to give its Proffered Instructions 8 and 9.  Proffered Instruction 8 would have instructed the jury that plaintiffs cannot prove disparate impact without statistical evidence.  However, the plaintiffs did not advance and the jury was not instructed on a disparate impact theory.  Proffered Instruction 9 sets forth what the Board believes are the elements of a "failure to accommodate claim," which is a misnomer.  Plaintiffs' claim was discrimination because of the handicaps of the residents of the sober house. The jury was instructed that to prove that claim, the plaintiffs must prove that the Board intentionally and because of the handicap of the residents failed to permit a spot zoning approval of the sober house as a "reasonable accommodation;" or that the Board intentionally failed to define the sober house as a single family dwelling as a "reasonable accommodation;" or that the Board intentionally denied a text amendment to the zoning code that would have created "sober house" as a conditional use.  The jury was properly instructed on the elements of the discrimination claim and on the meaning of "reasonable accommodation."  Jury Instructions No. 14-21.

3. Incomplete and Undisclosed Exhibits.

The Board complains that exhibits 7, 12 and 14 were not complete, and that exhibits 25, 26, 27 and 28 were not listed in the Final Pretrial Order.  Without delving further into each of these documents, suffice it to say that exhibits 7, 12 and 14 are records in the Board's own files, and if the Board felt it was important to have the jury see "complete" versions, they had them available at their fingertips.  Exhibits 25, 26, 27 and 28 are pleadings from the Board's state

court eviction suit against the Edringtons, again documents in the Board's own files.  If there was error, and I do not conclude that there was, it most assuredly was not prejudicial in any way.

4. <u>Larry Green Hearsay Evidence</u>.

The Board complains that the Court should not have admitted evidence concerning the statements of Larry Green, an attorney for the homeowners' association, made during a meeting of the association.  These statements were to the effect that Mr. Green did not believe the association would be able to enforce covenants and close the sober house because they would be violating the Fair Housing Act.

Error in the admission of this evidence, if it was error, might be considered as a ground for a new trial.  However, the Board has not requested a new trial.  Admission of this evidence, even if erroneous, would not be a ground for judgment in the Board's favor as a matter of law.  I also note in this regard that the Board did not mention the Green-related evidence in its Rule 50 motion at the conclusion of the plaintiffs' case.  Transcript [#153] at 27-54 (transcript pp. 526-53).  In any event, although the Board did object to the admission of this evidence on hearsay grounds when plaintiffs' counsel asked Donald Edrington, who attended the homeowners' meeting, about Mr. Green's comments, transcript [#151] at 77-78, the same evidence, actually in greater detail, was admitted without objection during the testimony of Gary McElwee, who was the developer of the Elk Springs subdivision and a member of the board of the homeowners' association.  Transcript [#152] at 12-13, 21-26 (transcript pp. 177-78, 186-91).

Having examined each of the Board's claimed errors, and concluding that none of them supports the granting of judgment notwithstanding the verdict, the motion is DENIED.

**Plaintiffs' Motion for Attorney's Fees and Litigation Expenses[#165]: GRANTED IN PART, DENIED IN PART.**

The Fair Housing Act permits aggrieved persons to pursue civil actions upon the occurrence of a discriminatory housing practice and to obtain appropriate relief which may include damages and injunctive relief.  42 U.S.C. § 3613(a); 42 U.S.C. § 3613(c)(1).  Upon the conclusion of the case "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."  42 U.S.C. § 3613(c)(2).

Plaintiffs were the prevailing parties.  As the statutory language states, the awarding of reasonable attorney's fees and costs is a matter within the court's discretion.  However, in the context of a different civil rights statute containing similar language, 42 U.S.C. § 1988, the Supreme Court long ago indicated that "a prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"  *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983)(quoting a Senate Report).

The Board first raises a procedural objection to an award here.  It argues that neither attorney's fees nor costs should be awarded, because the plaintiffs' motion was untimely.  Under Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, a motion for an award of attorney's fees and related non-taxable expenses must be filed within 14 days of the entry of judgment unless a statute or court order provides otherwise.  Similarly, under the local rules in this district, a bill of costs must be filed within 14 days after entry of judgment or final order.  D.C.COLO.LCivR 54.1.  As indicated above, the Clerk's Office issued a "Final Judgment" on December 28, 2012.  Plaintiffs filed a timely bill of costs on January 11, 2013 [#156].  However, they did not file a motion for attorney's fees at that time.

On January 18, 2013, after the deadline had passed, plaintiffs filed an "unopposed" motion for an extension of time in which to file a motion for attorney's fees [#160], albeit acknowledging that the deadline was January 11. This motion represented that counsel for the Board had been consulted, and that the Board "does not oppose Plaintiffs' request for an extension of time in which to file their motion for attorneys' fees." *Id* at 1. The Court granted the motion, setting a new deadline of February 11, 2003. The pending motion was filed on that date. In light of this history, the Board's objection now to the timeliness of the motion, asserted on the Board's behalf by different counsel, is not persuasive. The Court finds that the objection was waived, and the motion was timely.

This Court exercises its discretion to conclude that plaintiffs should now be awarded reasonable attorney's fees and costs. Although as I have indicated the sober house has operated unobtrusively and without incident since its inception, the Board doggedly resisted an accommodation that would permit the home to continue to operate in this same way for no other apparent reason than that the Board doesn't want them there. The Board had the advantage of having in-house counsel handling the case. Plaintiffs had to retain outside counsel at substantial expense. Accordingly, the pending motion is granted as to plaintiffs' entitlement to an award.

With respect to amount, both sides agree that the Court should start with the "lodestar," calculated by multiplying the number of hours expended by a reasonable hourly rate. *See, e.g., Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Plaintiffs claim that the lodestar here for fees billed by four law firms (Steve Polin Esq.; Fabian Hoffner Esq.; Lathrop & Gage LLP; and Kamlet Reichert LLP), including certain "Litigation Expenses," is $459,149.85. [#165 at 16]. The Board objects to the reasonableness of some of the rates charged and to the necessity and reasonableness of some of the hours recorded, ultimately concluding that any award of

reasonable attorney's fees should not exceed $203,664.25. [#177]. Plaintiffs' reply rejects nearly all of the reductions proposed by the Board and increases the amount of its request to $512,670.98, reflecting post-motion time incurred including time relating to the attorney's fees and costs issues. [#182].

It appears that the parties have not conferred and tried to resolve these differences. I want you to do that, and I will set forth below some initial reactions to the issues that you are disputing. If the parties cannot, after conferring in good faith, reach an agreement on the amount of attorney's fees to be awarded, plaintiffs should file a motion for the determination of the amount of attorney's fees, and they should set an evidentiary hearing on the motion. Accordingly, the pending motion is denied, without prejudice, as to the amount.

With respect to the objections noted in the Board's response [#177], I will keep an open mind on all the issues noted below. However, for possible guidance to the parties in their anticipated conferral, my initial impressions are as follows:

- I am not inclined to award fees for work performed before December 2010, which is the point at which plaintiffs acknowledge, and the time records confirm, that their attention focused on this lawsuit. In *Tsombanidis v. West Haven Fire Department,* 352 F.3d 565 (2d Cir. 2003), on which plaintiffs rely, a sober house sued a municipality under the Fair Housing Act and the Americans with Disabilities Act after the city, in apparent response to neighbors' complaints, applied zoning restrictions to limit the house to three residents. At the conclusion of a bench trial the trial court found that the city had intentionally discriminated against the sober house and had failed reasonably to accommodate the residents' handicap after the plaintiffs had sought a variance through proper administrative procedures.

The trial court included in its attorney' fee award fees billed by an attorney whose work was not devoted to the litigation but instead concerned a zoning appeal.  It reasoned that because the court had required the plaintiffs to pursue administrative avenues before asserting a federal discrimination claim, the fees were analogous to, for example, fees incurred in EEOC administrative proceedings that are mandatorily exhausted before filing a Title VII action.  *Tsombanidis v. City of West Haven, Connecticut,* 208 F.Supp. 2d 263, 282-83 (D. Conn. 2002).  The circuit affirmed, holding that "an administrative proceeding could be included in the calculation of reasonable attorney's fees if is 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'"  352 F.3d at 581.

In the present case the plaintiffs have not shown that any of the pre-December 2010 work was a necessary prerequisite to the filing of the federal case, nor have they attempted to distinguish between any such work and work that would have routinely been incurred had a reasonable accommodation been made.

- I am not inclined to award fees incurred in responding to the Board's state court suit. Plaintiffs have not directly addressed how fees incurred in a separate litigation that was not a prerequisite to this federal action should be recoverable under 42 U.S.C. § 3613(c)(2).  Also the reply does not address the Board's arguments that fees incurred in that case can be addressed in that case.

- I am not inclined to award fees incurred in communications with the Department of Justice, which appear to have no direct connection with this lawsuit.

- On the other hand, I am inclined to consider fees incurred regarding the so-called text amendment after this lawsuit was filed. They strike me as, in substance, an attempt to resolve the dispute, and the lawsuit, by accommodation and agreement.

- I would not award fees for work concerning the claims asserted against the co-defendant, Spring Valley Sanitation District. It appears that plaintiffs have attempted to eliminate that work from their request. The Board agrees but suggests that some SVSD time did slip in.

- The Board questions whether the $400 per hour charged by Mr. Polin (a reduction from his normal $475 he says) is representative of market rates for similar work in Colorado. Plaintiffs do not provide supporting evidence (nor has the Board provided evidence to the contrary). However, as plaintiffs note, judges in this district have approved equal and higher hourly rates. *Rocky Mountain Christian Church v. Board,* No. 06CV554, 2010 WL 3703224, at *5 (D. Colo. Sept. 13, 2010)(Blackburn, J)($547 per hour); *Trujillo v. Campbell,* No. 09CV3011, 2012 WL 1835245, at *3 (D. Colo. May 21, 2012)(Mix, MJ)($400). Mr. Polin has substantial experience in the relatively narrow specialty involved in this case.

- The Board questions Mr. Polin's charging for his travel time, suggesting that there might have been no need to employ counsel from outside this area. Plaintiffs respond that they do not object to a reduction of Mr. Polin's hourly rate for travel time, without suggesting a number. Whether travel time is compensable depends on the circumstances of the particular case, such as whether the out-of-town lawyer has a particular specialty that might not be readily available locally, whether the lawyer worked on the case while traveling, whether all or part of the travel time is billed, the

rate used, etc.  *Compare Anchondo v. Anderson, Crenshaw & Associates, LLC,* 616 F.3d 1098, 110506-06 (10th Cir. 2010) with *Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir. 1983).

- The Board disputes inclusion of any of Mr. Hoffner's charges, both in terms of his hours (questioning whether Mr. Hoffner contributed to the prosecution of this case specifically) and his rate ($375 per hour, for which he offers no evidence as to reasonableness in this community).  The Court has no problem in the abstract with inclusion of attorney's fees billed to the client by the client's "general counsel.'  However, the same requirements in terms of direct relation to the case and reasonableness of rates apply.

- The Board questions the Kamlet Reichert charges as essentially being unrelated to the federal case.  Once again, the Court suggests and expects that plaintiffs will reconsider their position in light of these comments.

- The Board similarly questions the charges for the work of James E. Dallner.  It is obvious from reviewing the various time records that Mr. Dallner had an active role in the case.  There may or may not be remaining questions about some time entries after the reply was filed.  The Court is not, however, inclined to question the representations of an officer of the court as to time recorded to the case without good reason.

- I am inclined to award some amount for expert witness fees.  Expert fees (in excess of the standard fee) are not awardable under Rule 54(d), which covers costs allowed under 28 U.S.C. § 1920.  *Sorbo v. United Parcel Service,* 432 F.3d 1169, 1179 (10th Cir. 2005).  It appears, however, that the Court can, in its discretion, consider expert

fees under 42 U.S.C. § 3613(c)(2), which authorizes an award of "a reasonable attorney's fee *and costs*)(emphasis added). The expert fees requested, which in turn exactly correspond with the invoices of the two plaintiff experts are $3,802 for Riley Regan and $21,786.35 for Andrew Wainright (Wainright Global). The objections voiced by the Board in its response [#177 at 15-16] might have some merit. However, it does not appear that the parties have discussed or attempted to resolve the matter of expert fees.

- To the extent that counsel's accommodation and travel expenses, or computer assisted research, or other expenses not taxable under 28 U.S.C. § 1990 are included in the fee bills, the Court will consider them and any objection to them here. *See Sorbo,* 432 F.3d at 1180.

- I am not, however, inclined to award as costs under 42 U.S.C. § 3613(c)(2) compensation for Chris Edrington's time, because, as indicated above, the jury may have considered that evidence in making its $400,000 damages award.

**<u>Plaintiffs' Motion for Review of Taxation of Costs [#174]: GRANTED</u>**
**<u>Plaintiffs' Motion to Correct or Modify the Final Judgment [#179]: GRANTED</u>**

The Court did not expressly discuss the assessment of costs at the conclusion of the trial, anticipating that plaintiffs would file their bill of costs in due course. Before the deadline for the bill of costs had arrived, the Clerk's Office entered its "Final Judgment." [#150]. It did not address costs. Plaintiffs filed a timely bill of costs. However, the Clerk's Office declined to award costs on the ground that costs were not awarded in the Final Judgment.

Plaintiffs move for a correction or modification of the judgment to include an award of costs [#179]. The Board objects, arguing that the Court cannot consider a motion to modify the judgment under Rule 60 because (despite the fact that the Board filed an appeal) that there is no

final judgment to modify.  Plaintiffs also move for an order permitting them to re-submit their bill of costs [#174].  The Board objects, arguing that the Court should either affirm the Clerk's denial of costs or give the costs sought "careful scrutiny" and limit the award to $11,115.03.

The plaintiffs, as the prevailing parties, are entitled to an award of costs.  Fed. R. Civ. P. 54(d)(1); D.C.Colo.LCivR 54.1.  The categories of costs that may be taxed, absent some other statutory authority, are listed at 28 U.S.C. § 1920.  It was not the Court's intent to deny costs. Rule 58(e) provides, "[o]rdinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees."  In this instance, because the Court had not yet entered a final, permanent injunction, the Clerk's Office perhaps should have withheld entering judgment pursuant to Rule 58(b)(2).  In any event, the Court by this order is directing the Clerk's Office to enter an amended final judgment that incorporates this order and the Court's separate Order on Permanent Injunction also being entered today.

Having given the bill of costs "careful scrutiny" as requested, the court awards costs to the plaintiffs and against the Board as set forth below.  I note that this is slightly less than the amount the Board indicated it did not oppose, but it is the amount that I have calculated after reviewing the relevant records.

| | |
|---|---|
| Fees of the Clerk | $350.00 |
| Fees for Service of Summons and Complaint | 75.00 |
| Fees for Process Servers | |
| Denise Diers | 0.00 |
| Lawrence Green | 0.00 |
| Fees for Court Reporter/Transcripts Necessarily Obtained | 0.00 |
| Fees and Disbursements for Printing | 778.74 |

Fees of Witnesses

| | |
|---|---|
| Thomas Jankovsky | 220.00 |
| John Martin | 220.00 |
| Mike Samson | 220.00 |
| Fred Jarmon | 220.00 |
| Dean Gordon | 220.00 |
| Bob Anderson | 0.00 |
| Gary McElwee | 220.00 |
| Andrew Wainright | 576.00 |
| Christopher Edrington | 0.00 |
| Don Edrington | 0.00 |
| Fees for Exemplification & Copies | 1,380.29 |
| Costs Incident to Taking of Depositions | 6,091.28 |
| Other Costs | |
| FedEx Charges | …29.39 |
| **Total Costs Awarded** | **$10,600.70** |

**[Defendant's] Motion Authorized by Fed. R. Civ. P. 58(e) to Treat Plaintiffs' Request for Attorney's Fees as a Timely Motion Under Fed. R. Civ. P. 59 [#181]: MOOT.**

This is a maneuver by the Board to counter the possibility that its motion for judgment as a matter of law filed on January 28, 2013 might be considered untimely. In what might be seen as a "tit for tat" response, plaintiffs argue that the motion was indeed untimely. I disagree. Rule 50(b) requires that the motion be filed no later than 28 days after the entry of judgment. The

Clerk's "Final Judgment" was entered on December 28, 2012.  Twenty-eight days after December 28, 2012 takes us to January 25, 2013.  Plaintiffs are quick to add that Rule 6(b)(2) prohibits the Court from extending the time to act under Rule 50(b).  However, Rule 6(d) adds three days to the due date when service of the document that triggered the running of the time period was made by, among other ways, electronic service.  *See* Rule 5(b)(E).  The Clerk's "Final Judgment" was served electronically.  My interpretation is that this made the Board's motion due on January 28, 2013, the date when it was filed.  In any event, if it were necessary to grant motion #181 in order to make the Board's motion timely, I would do so.  Quite frankly, it is time that the warring factions stop resting their cases on their opponents' mistakes.  Rather, it might behoove both sides to focus their attention on a possible compromise settlement that puts this unpleasant litigation and its ongoing financial drain behind them.

DATED this 17th day of September, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge